# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

U.S. COMMODITY FUTURES TRADING
COMMISSION and THE COMMISSIONER
OF CORPORATIONS OF THE STATE OF
CALIFORNIA,

     Plaintiffs,

vs.

NATIONAL INVESTMENT
CONSULTANTS, INC., a California
corporation, SOUTH CHINA
INVESTMENTS, INC., a California
corporation,
PACIFIC BEST GROUP LTD, a.k.a.
PACIFIC BEST COMPANY LTD, a British
Virgin Islands Corporation, YI KERRY XU,
an individual, RUN PING ZHOU a.k.a
FLORA ZHOU, an individual, and WEI M.
TSE a.k.a. RAYMOND TSE, an individual,
     Defendants,

     and

THERESSA C. WONG, an individual,
     Relief Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**SEALED BY COURT ORDER**

FILED UNDER SEAL

**PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF THEIR MOTION FOR
*EX PARTE* STATUTORY RESTRAINING
ORDER, PRELIMINARY INJUNCTION,
EXPEDITED DISCOVERY AND OTHER
ANCILLARY RELIEF**

Dated: June 28, 2005

KEVIN K. BATTEH, (DC Bar No. 482021)
Trial Attorney
JAMES H. HOLL, III, (DC Bar No. 453473)
Senior Trial Attorney
ERIN E. VESPE, (CT Bar No. 407295)
Chief Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st St. N.W.
Washington, D.C. 20581
Telephone (202) 418 -5636
Facsimile (202) 418-5538

Attorneys for Plaintiff U.S. Commodity
Futures Trading Commission

1

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  THE PARTIES ............................................................................................... 3

    A.   Plaintiffs ............................................................................................. 3

    B.   Defendants. ......................................................................................... 3

    C.   Relief Defendant ................................................................................. 5

III. STATEMENT OF ISSUES ........................................................................... 5

IV.  STATEMENT OF FACTS ............................................................................ 6

    A.   Defendants' Fraudulent Foreign Currency Scheme. ......................... 6

        1.   Defendants' Advertising On The Internet And In Print.......... 6

        2.   Defendants' Fraudulent Solicitation Of Customers................ 7

        3.   Customers' Investments With Defendants ............................ 10

    B.   Defendants South China Common Enterprise And
        Pacific Best Offered Illegal Futures Contracts To
        Members Of The Retail Public ........................................................ 11

V.   JURISDICTION. .......................................................................................... 12

VI.  ARGUMENT ................................................................................................ 13

    A.   The Commodity Exchange Act Explicitly Authorizes
        The Court To Grant The *Ex Parte* Statutory Relief ....................... 14

    B.   The Evidence Meets The Standard For
        Entry Of An *Ex Parte* Restraining Order ..................................... 15

    C.   Defendants Have Committed Fraud In Connection
        With The Sale Of Off-Exchange Futures Contracts,
        In Violation Of Sections 4b(a)(2)(i) and (iii) Of The
        Act And Commission Regulations 1.1(b)(1) and (3)........................ 17

    D.   Defendants' Foreign Currency Futures Transactions
        Violate Section 4(a) Of The Commodity Exchange Act. ................. 20

    E.   NICI And South China Constitute A Common Enterprise................. 23

    F.   Expedited Discovery Is Appropriate To Enable
        The Commission To Fulfill Its Statutory Duties.............................. 24

VII.     CONCLUSION............................................................................................... 25

# TABLE OF AUTHORITES

## FEDERAL CASES

*CFTC v. U.S. Precious Metals Depository Co.*, 468 F. Supp. 1149 (S.D.N.Y. 1979) ................. 19

*CFTC v. Muller*, 570 F.2d 1296 (5th Cir. 1978)................................................................. 14, 15, 16

*CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321 (11th Cir. 2002). ........................................... 14, 18

*CFTC v. American Metal Exchange Corp.*, 693 F. Supp. 168 (D.N.J. 1988). ........................... 15

*CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104 (S.D.N.Y. 1998), *aff'd in relevant part sub nom, CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) ........................................ 18

*CFTC v. British Am. Commodity Options Corp.*, 560 F. 2d 135 (C.A.N.Y. 1977) ..................... 16

*CFTC v.Chilcott et al.*, 2002 WL 1455345 (M.D. Fla.) ............................................................. 23

*CFTC v. Clothier*, 788 F. Supp. 490 (D. Kan. 1992)............................................................. 14, 15

*CFTC v. Co Petro*, 680 F2d 573 (9th Cir. 1982) ................................................................. 21

*CFTC v. Crown Colony Commodity Options, Ltd.*, 434 F. Supp. 911 (S.D.N.Y. 1977) .............. 16

*CFTC v. Heffernan*, 245 F.Supp. 2d 1276 (S.D.Ga 2003)..................................................... 19

*CFTC v. Hunt*, 591 F2d 1211 (7th Cir. 1979), *cert denied*, 442 U.S. 921 (1979) ..................... 16

*CFTC v. First Bristol Group, Inc.*, 2002 WL 31357411 (S.D. Fla.). ......................................... 23

*CFTC v. Luger*, 2002 WL 1789768 (S.D. Fla.) ................................................................. 23

*CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669 (S.D.N.Y. 1979)......................... 14, 15

*CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766 (9th Cir. 1995)............................................. 21

*CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d. 676 (D. Md. Mar. 20, 2000). ............................................................. 19, 21, 22

*CFTC v. Topworth*, 205 F.3d 1107 (9th Cir. 1999). ............................................................. 21

*Delaware Watch Co. v. FTC*, 332 F.2d 745 (2nd Cir. 1964) ............................................. 22

*Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742 (D.C. Cir. 1988)................................. 20

*Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96 (7th Cir. 1977) ........................................ 19

*Psimenos v. E.F. Hutton & Co, Inc.*, 722 F.2d 1041 (2nd Cir. 1983) ..................................... 19

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2nd Cir. 1986)........................................... 18

*SEC v. Elliot*, 953 F.2d 1560 (11th Cir. 1992); ................................................................. 22

*Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1175 (1st Cir. 1973). ..................... 22

*U.S. v. Nutri-Cology, Inc.*, 982 F.2d 394 (9th Cir. 1992). ..................................... 16, 17

*U.S. v. Odessa Union Warehouse Co-op*, 833 F.2d 172 (9th Cir. 1987) ......................... 16

*Waltham Precision Instrument Co. v. FTC*, 327 F.2d 427 (7th Cir.), cert. denied, 377 U.S.
    992 (1964) .................................................................................................................. 22

*Zale Corp. and Corrigan-Republic, Inc. v. FTC*, 473 F.2d 1317 (5th Cir. 1973) ......................... 22

## FEDERAL STATUTES

7 U.S.C. § 1 (2004) .................................................................................................... 3

7 U.S.C. § 6a (2004) ........................................................................................... passim

7 U.S.C. § 6b(i) (2004) ....................................................................................... passim

7 U.S.C. § 6b(iii) (2004) ..................................................................................... passim

7 U.S.C. § 13a-1 (2004) ..................................................................................... passim

7 U.S.C. § 13a-2 (2004) ..................................................................................... passim

## STATE STATUTES

Cal.Corp.Code § 29540 (2004) ...................................................................................... 2

Cal. Corp. Code § 29544 (2004) .................................................................................... 2

## ADMINISTRATIVE CASES

*In re First Nat'l Monetary Corp.*, 1985 WL 55299 (CFTC). ......................................... 21

*In re Slusser*, 1999 WL 507574 (CFTC), *aff'd and remanded on other grounds sub nom.*
    *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000) ...................................................... 18

*Sudol v. Shearson Loeb Rhodes, Inc.*, 1985 WL 55286 (CFTC) ................................. 18

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION and THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, | ) Case No.:<br>)<br>)<br>) PLAINTIFFS' MEMORANDUM OF POINTS<br>) AND AUTHORITIES IN SUPPORT OF<br>) THEIR MOTION FOR *EX PARTE* |
| Plaintiffs, | ) STATUTORY RESTRAINING ORDER,<br>) PRELIMINARY INJUNCTION, EXPEDITED |
| vs. | ) DISCOVERY AND OTHER ANCILLARY<br>) RELIEF |
| NATIONAL INVESTMENT CONSULTANTS, INC., a California corporation, SOUTH CHINA INVESTMENTS, INC., a California corporation, PACIFIC BEST GROUP LTD, a.k.a. PACIFIC BEST COMPANY LTD, a British Virgin Islands Corporation, YI KERRY XU, an individual, RUN PING ZHOU a.k.a FLORA ZHOU, an individual, and WEI M. TSE a.k.a. RAYMOND TSE, an individual, | )<br>)<br>)<br>) FILED UNDER SEAL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| THERESA C. WONG, an individual, Relief Defendant. | )<br>)<br>) |

## I.    INTRODUCTION

Plaintiff, the United States Commodity Futures Trading Commission (the

"Commission"), and Plaintiff Commissioner of Corporations of the State of California ("State of

California") (collectively, "Plaintiffs") submit this Memorandum of Points and Authorities in

support of their *ex parte* Motion for Statutory Restraining Order, Preliminary Injunction, and

Other Equitable Relief against Defendants National Investment Consultants, Inc. ("NICI"),

South China Investments, Inc. ("South China"), Pacific Best Group Ltd ("Pacific Best"), and

individual Defendants Yi Kerry Xu, Run Ping Zhou, Wei M. Tse (collectively, the "Defendants")

1

1   and relief Defendant Theresa C. Wong.

2       Since at least March 2004, Defendants South China acting as a common enterprise with

3   NICI (together the "South China Common Enterprise") and Pacific Best have been operating a

4   foreign currency scam in San Francisco, California. The South China Common Enterprise and

5   Pacific Best have solicited and accepted at least $182,500 from at least five known retail

6   investors to engage in speculative trading of illegal off-exchange foreign currency futures

7   contracts. These investors lost almost all of their investment. Defendants have cheated,

8   defrauded, and deceived customers by, among other practices: a) falsely misrepresenting the

9   profit potential from trading through their business; b) failing to disclose the risk of loss from

10  trading in foreign currency futures contracts through their business; c) failing to disclose the lack

11  of experience of the South China Common Enterprise account executives; and d) failing to

12  disclose the fact that Defendant Zhou had been the subject of prior California litigation stemming

13  from similar fraudulent solicitation which resulted in an injunction against her.

14      By offering the illegal futures contracts, Defendants the South China Common Enterprise

15  and Pacific Best have violated Section 4(a) of the Commodity Exchange Act (the "Act"), 7

16  U.S.C. §§ 6(a)(2004). Furthermore, by making material misrepresentations and omissions,

17  Defendants have engaged, are engaging, or are about to engage in acts and practices that violate

18  the anti-fraud provisions of Section 4(b)(i) and (iii) of the Act, 7 U.S.C.§ 6b(a)(i) and (iii)(2004)

19  and Section 1.1(b)(1) and (3) of the Commission's Regulations, 17 C.F.R. §§1.1(b)(1) and (3)

20  (2002). Defendants' conduct is also in violation of provisions of the California Commodity Law

21  of 1990 (Cal. Corp Code Sections 29520 and 29536).

22      Accordingly, pursuant to Sections 6c and 6d of the Act, 7 U.S.C. §§ 13a-1 and 13a-2

23  (2004), and California Corporations Code Sec. 29540 and 29544, Plaintiffs bring their Motion

24  for *ex parte* relief to enjoin the unlawful acts and practices of Defendants.

2

## II.     THE PARTIES

**A.     Plaintiffs**

Plaintiff <u>Commodity Futures Trading Commission</u> is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq. (2004).

Plaintiff <u>Commissioner of Corporations of the State of California</u> brings this action on behalf of the people of California in the public interest.  The Acting Commissioner, Wayne Strumpfer, is empowered by legislative enactment to protect the people of California from unlawful commodity and securities transactions and activities.

**B.     Defendants**

<u>Pacific Best Group Ltd. a.k.a. Pacific Best Company Ltd.</u> is a British Virgin Islands Company whose registered office is situated at P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.  Pacific Best also maintains a presence in Hong Kong. At all times relevant to this matter, Pacific Best has transacted business within and from California directly and through the agency of the South China Common Enterprise in San Francisco, California, and through various individuals, including but not limited to the individual Defendants Xu, Zhou and Tse.  These business activities include entering into written agreements with investors in California and particularly San Francisco, soliciting and accepting money from the investors, purporting to execute trades for investors and issuing account statements to investors, through South China Common Enterprise.  Pacific Best has never been registered with the Commission or the State of California in any capacity.

<u>National Investment Consultants, Inc.,</u> incorporated in California on February 2, 2004, has its principal place of business at 300 Montgomery Street, Suite 660, in the City and County of San Francisco.  NICI also maintains a presence on the world-wide web at

*www.nationalinv.com.*  On its website, NICI indicates an apparent corporate relationship with defendant Pacific Best, heading its web pages as "National Investment Consultants Inc. of Pacific Best Company Ltd." and describing itself as the "communication link between customers and Pacific Best Company Ltd."  NICI has never been registered with the Commission in any capacity.

South China Investments, Inc., incorporated in California on November 9, 2000, has its principal place of business at 300 Montgomery Street, Suite 730, in the City and County of San Francisco.  South China and NICI share the same street address and telephone number. The South China website *www.southchinainvestment.com* (now defunct) is substantially similar to the NICI website *www.nationalinv.com.*  South China and NICI have bank accounts and employees in common.  Like NICI, on its website, South China described itself as the communication link between customers and Pacific Best.  South China has never been registered with the Commission in any capacity.

Yi Kerry Xu, an individual, is an account manager for the South China Common Enterprise.  Xu is a California resident and her last known address is 300 Davey Glen Road Apartment 3822 Belmont, CA 94002.  She has never been registered with the CFTC in any capacity.

Run Ping Zhou a.k.a. Flora Zhou, an individual, is a manager and, upon information and belief, a part owner of the South China Common Enterprise.  Defendant Zhou was a defendant in a similar state court action filed by the State of California, *The People of the State of California v. Y&T, Inc d.b.a. Tokyo International Investment, LTD et al.*, Cal. Superior Court Case No. 310839 (March 2000) (the "prior California litigation"). The prior California litigation resulted in a permanent injunction against Zhou prohibiting her from engaging in, among other things, the very conduct complained about herein, *i.e*, fraudulent solicitation.  A copy of the injunction is

attached as Exhibit A to the Complaint.  Zhou is a California resident and her last known address is 3567 Kimberly Road, Cameron Park, California 95682.  She has never been registered with the CFTC in any capacity.

Wei M. Tse a.k.a. Raymond Tse, an individual, is a manager and, upon information and belief, a part owner of the South China Common Enterprise.  Tse is a California resident and his last known address is 88 Howard Street #809, San Francisco, California.  He has never been registered with the CFTC in any capacity.

## C.    Relief Defendant

Theresa C. Wong, an individual, is purportedly the accountant for the South China Enterprise.  Wong has received ill-gotten gains from the individual Defendants, the South China Common Enterprise and/or Pacific Best.  Wong is a California resident and her last known address is 88 Howard Street #809, San Francisco, California.  Wong has never been registered with the CFTC in any capacity.

## III.    STATEMENT OF ISSUES

Whether pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, this Court should issue a statutory *ex parte* restraining order to freeze assets owned or controlled by Defendants, preserve and protect all records owned or controlled by Defendants, and appoint a temporary receiver to administer the order, if necessary, based on the evidence presented herein that defendants have defrauded retail customers in connection with foreign currency futures contracts, in violation of Sections 4b(a)(2)(i) and(iii) of the Act, 7 U.S.C. § 6b(a)(i) and(iii) (2004) and Commission Regulations §1.1(b)(1) and(3), 17 C.F.R. §1.1(b) (1) and (3) (2002) and offered and/or sold illegal futures contracts to retail customers in violation of Section 4(a) of the Act, 7 U.S.C. §6(a) (2004)?

Whether this Court should issue a preliminary injunction order against the Defendants based on the evidence set forth herein demonstrating that the Commission has a probable success on the merits, *i.e.*, showing that the defendants violated Sections 4b and 4(a) of the Act and Commission Regulation 1.1(b), and is entitled to a presumption of irreparable injury?

Whether this Court should issue an order allowing expedited discovery?

## IV.   STATEMENT OF FACTS

**A.   Defendants' Fraudulent Foreign Currency Scheme**

### 1. *Defendants' Advertising On The Internet And In Print*

Since at least March 2004 through the present, Defendants South China Common Enterprise and Pacific Best, through their officers, employees and agents, including individual defendants, Kerry Xu, Flora Zhou, and Raymond Tse, have operated a foreign currency business in their San Francisco, California office for the purpose of selling foreign currency futures contracts to the retail public.

In or around February 2004, the South China Common Enterprise abandoned the name South China Investments, Inc. and changed its name to National Investment Consultants, Inc. Defendants South China Common Enterprise and Pacific Best initially advertised to potential customers through the website *www.southchinainvestment.com* (now defunct) and now use an almost identical website *www.nationalinv.com*. The mast head of the website reads: "National Investment Consultants, Inc. of Pacific Best Company Ltd.," and claims that NICI has over 30 years of management and trading experience. (Attached as Exhibit 1 is a copy of the "About Us" page of the Defendants' website www.nationalinv.com.) According to the website, NICI acts as the communication link between clients and Pacific Best. Defendants, through the websites, advertise to the public that they have extensive management and trading experience in order to entice investors and create the impression that they are successful, well established, legitimate

Memorandum of Points and Authorities

foreign currency traders.

Defendants South China Common Enterprise and Pacific Best also target customers in the San Francisco Chinese community by placing ads in the "Employment/Job Opportunity," classified section of the Chinese language *Sing Tao Daily* newspaper in San Francisco, California. (Exibit 2, Declaration of Hongyu Christina Liang, paragraph 3 (hereinafter, "Ex. 2, ¶3"), Ex. 3, ¶4.) The ads in the *Sing Tao Daily* offer employment/job opportunities with promises of health insurance, good pay and a professional work environment to persons who speak Chinese (Mandarin or Cantonese). Attached as Exhibit 4 is a copy of two of Defendants' newspaper advertisements.

Persons who respond to the ads are invited to Defendants' office, where Defendants South China Common Enterprise and Pacific Best, through their officers, employees and agents, including individual defendants, Kerry Xu, Flora Zhou, and Raymond Tse, provide minimal training on how to trade foreign currency and solicit trainees to invest funds. (Ex. 2, ¶¶3-5, Ex. 3, ¶¶ 4-6.)

### 2. *Defendants' Fraudulent Solicitation Of Customers*

Since on or about March 2004, Defendants have intentionally, knowingly, falsely, and misleadingly or with reckless disregard made material misrepresentations and omissions concerning foreign currency trading with the South China Common Enterprise and Pacific Best, including:

        a.   misrepresenting the profit opportunities available from trading through their business; (Ex. 2, ¶ 5, Ex. 3, ¶ 6, Ex. 5, ¶ 5, Ex.6, ¶¶ 6, 29 Ex. 7, ¶ 5)

        b.   failing to disclose the risk of loss from trading through their business; (Ex. 2, ¶¶ 5, 11, Ex. 3, ¶ 6, 11 , Ex. 5, ¶¶ 5, 13, Ex. 6, ¶¶ 6, 20, Ex. 7, ¶ 5)

        c.   failing to disclose the lack of experience of the South China Common

Memorandum of Points and Authorities

Enterprise account executives (Ex. 7, ¶ 5); and

    d.   failing to disclose the prior California litigation against Defendant Zhou. (Ex. 2, ¶ 11, Ex. 3, ¶10, Ex. 5, ¶ 5, Ex. 6, ¶ 21, Ex. 7, ¶ 16).

In soliciting potential customers, Defendant Xu made misleading and false claims and failed to disclose material facts to one or more customers.  These statements and omissions include, but are not limited to, the following statements or words to the same effect:

    a.   no one would lose money trading foreign currency because Xu had the capacity to "stop" or "lock in" a position before the customer sustained any loss; (Ex. 5, ¶ 5)

    b.   the customer's investment was FDIC insured; (Ex. 2, ¶ 6)

    c.   Xu had lots of clients who made "tons of money" in the foreign currency markets; (Ex. 5, ¶ 5)

    d.   an investment in foreign currency was no more risky than, and no different from, investing in stocks; (Ex. 5, ¶ 5)  and

    e.   the customer's investment would be tax-free if he made deposits in cash. (Ex. 5, ¶ 5).

In soliciting potential customers, Defendant Zhou made misleading and false claims and failed to disclose material facts to one or more customers.  These statements and omissions include, but are not limited to, the following statements or words to the same effect:

    a.   the South China Common Enterprise was FDIC insured; (Ex. 3, ¶6)

    b.   Zhou could make the customer a quick profit from an October 20, 2004, investment and the customer would have profits in time for Christmas or New Year; (Ex. 6, ¶ 9)

     c.  there was a method in place to prevent the loss of any of the customer's

         initial investment; (Ex. 2, ¶ 5, Ex. 6, ¶ 6)

     d.  the South China Common Enterprise was an off-shore company and if the

         customer invested in cash the customer would not have to report tax

         information to the government; (Ex. 3, ¶ 6, Ex. 6, ¶ 7, Ex. 7, ¶ 6) and

     e.  Zhou never disclosed that she was the subject of the prior California

         litigation or that she had been subject to a permanent injunction

         prohibiting similar conduct. (Ex 2, ¶11, Ex. 3, ¶ 10, Ex. 6, ¶ 21, Ex. 7,

         ¶ 16).

Defendants Xu, Zhou, and Tse, together, purported to train at least one customer in currency trading and then solicited the customer to invest money to trade with the South China Common Enterprise. During the course of the training and in subsequent solicitations, Defendants Xu, Zhou, and Tse, together, made misleading and false claims and failed to disclose material facts to at least one customer. These statements and omissions include, but are not limited to, the following statements or words to the same effect:

     a.  there was more profit to be made trading foreign currency than trading

         stocks; (Ex. 3, ¶ 9)

     b.  no one would lose money trading foreign currency; (Ex. 3, ¶ 6) and

     c.  profits were not taxed because the trading was through an offshore

         company. (*Id*).

Defendants, including Defendants Xu, Zhou and Tse never explain nor disclose the specific role of Pacific Best in their solicitations.(Ex. 2, ¶ 9, Ex. 3, ¶ 7, Ex. 5, ¶ 6, Ex. 6, ¶ 7, Ex. 7,¶ 6).

### 3. *Customers' Investments With Defendants*

At the conclusion of their training period, Defendants South China Common Enterprise and Pacific Best, and individual defendants, Kerry Xu, Flora Zhou, and Raymond Tse, solicit the "trainees" to open personal accounts at the South China Common Enterprise in order to speculate in foreign currency by investing their own money. (Ex.2, ¶ 6, Ex. 3, ¶ 7). Defendants seek initial investments of $20,000 from these trainees to place in personal accounts. (Ex. 2, ¶ 6, Ex. 3, ¶ 7, Ex. 5, ¶ 7).

Defendants South China Common Enterprise and Pacific Best, and individual defendants, Kerry Xu, Flora Zhou, and Raymond Tse, encourage the trainees to bring Defendants additional investors and often, if and when they do so, they bring in relatives or friends.  (Ex. 2, ¶¶ 4, 10, Ex. 3, ¶¶ 5, 7).  The trainees then become "Account Executives" who manage these new investors' accounts. (Ex. 2, ¶ 4, Ex. 3, ¶ 5).  Many of these "trainees" often have no experience trading in the foreign currency markets or any other trading experience prior to the minimal training provided by Defendants, even though the South China Common Enterprise touts the professional expertise and experience of its traders. (Ex. 2, ¶ 2, Ex. 3, ¶ 3).

Defendants South China Common Enterprise and Pacific Best, and individual Defendants Kerry Xu, Flora Zhou, and Raymond Tse, then tell customers to bring a minimum investment of $20,000 in cash to Defendants' place of business. (Ex. 6, ¶¶ 7-8, Ex. 7, ¶ 7).  In one instance, Defendant Zhou accompanied a 78 year old customer to her bank as the investor withdrew $20,000 in cash and gave it to the Defendants to open her account.  (Ex. 7, ¶ 7).  Defendants also accept checks made payable to Pacific Best.  (Ex. 2, ¶ 7, Ex. 5, ¶ 11, Ex. 6, ¶ 13).  On at least one occasion, Defendant Tse requested that a customer make his $20,000 check payable to "Raymond Tse."  (Ex. 3, ¶ 7).

After opening their accounts, customers receive calls from Defendants urging them to place a currency trade. (Ex. 7, ¶ 9). Customers often receive these calls late at night or early in the morning. Customers are told that they needed to make a quick decision in order to cash in on a shift in a specific foreign currency's price. The South China Common Enterprise solicits and receives the customer orders on behalf of Pacific Best, the purported counter party to the transactions. (Ex. 2, ¶ 9-10). Within a few weeks of opening an account, the individual Defendants tell customers that they must place more money into their account to cover outstanding trades. (Ex. 2, ¶ 8, Ex. 3, ¶ 8, Ex. 5, ¶ 10, Ex. 6, ¶ 11, Ex. 7, ¶ 8). Defendants tell customers that if they fail to invest additional funds, the customers will lose their entire investment. (Ex. 2, ¶ 8, Ex. 6, ¶¶ 11-12). At least five retail investors invested a total of $182,500 with Defendants and all of them lost almost all of their investment. (See Ex. 2, ¶ 12, Ex. 3, ¶ 12, Ex. 5, ¶ 16, Ex. 6, ¶ 23, Ex. 7, ¶ 12). Based on conversations with Declarants and other investors, there are at least several additional similarly situated investors. (*See e.g.* Ex. 2, ¶ 12).

**B.    Defendants South China Common Enterprise And Pacific Best Offered Illegal Futures Contracts To Members Of The Retail Public**

The Defendants South China Common Enterprise and Pacific Best have offered foreign currency futures contracts to members of the retail public. (Ex. 8, ¶ 32). The foreign currency contracts marketed by the Defendants South China Common Enterprise and Pacific Best are standardized contracts for the purchase or sale of commodities for future delivery at prices or using pricing formulas that are established at the time the contracts are initiated, and may be fulfilled through offset, cancellation, cash settlement or other means to avoid delivery. (Ex. 8, ¶¶ 27-29, 32).

The customers who are solicited or who purchase these futures contracts have no commercial need for the foreign currency. (Exs. 2-3, 5-7). Defendants do not conduct their

foreign currency futures transactions on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity. Defendants do not execute or consummate their contracts by or through a contract market. As a result, the contracts are illegal futures contracts.

## V.    JURISDICTION

The Commodity Futures Modernization Act of 2000 clarified the Commission's jurisdiction over retail foreign currency when engaged in with a counterparty that is not a regulated financial institution. Section 2(c)(2)(B)(i) and (ii) of the Act, 7 U.S.C. § 2(2004), grants the Commission jurisdiction over certain transactions in foreign currency that are contracts for the sale of a commodity for future delivery, including the transactions alleged in this action.

Section 2(c)(2)(B)(ii) of the amended Act defines the "retail" nature of the customer that brings a foreign currency agreement, contract or transaction within the Commission's jurisdiction: the Commission has jurisdiction if the transaction on foreign currency was not offered to or entered into with an "eligible contract participant." Section 1a(12)(A)(xi) of the amended Act defines an eligible contract participant as an individual who has total assets in excess of:  a) $10 million; or b) $5 million and who enters the transaction to manage the risk associated with the asset he owns. Defendants targeted retail investors in its solicitations; indeed, the five customers from whom Plaintiffs have obtained sworn affidavits are all retail investors.

Section 2(c)(2)(B)(ii) denies the Commission jurisdiction over retail sales of foreign currency options if the counterparty, or the person offering to be the counterparty, of the retail customer is

    (I)      a financial institution;
    (II)     a broker or securities dealer …
    (III)    an associated person of a broker or dealer …
    (IV)     an insurance company …
    (V)      a financial holding company …
    (VI)     an investment bank holding company … ."

None of the named Defendants are the proper counterparties for retail foreign currency futures transactions. Therefore, the Commission has jurisdiction to bring this action.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e)(2004), because defendants are found in, inhabit, or transact business in the Northern District of California, and the acts and practices in violation of the Act have occurred within this District, among other places.

## VI.    ARGUMENT

Plaintiffs seek a statutory restraining order to: preserve the books and records of Defendants to protect them from destruction; locate and freeze assets of Defendants, so as to provide for a return of funds to defrauded customers before they are dissipated; and ensure that Commission and State of California representatives have immediate and complete access to Defendants' books and records in order to determine the full extent of Defendants' wrongdoing, to locate other customers who were defrauded by Defendants, and to identify customers' funds and other assets of Defendants. Plaintiffs also seeks a preliminary injunction to prevent Defendants or any other person or entity associated with him from further violating the Act and Regulations pending a trial in this matter.

As set forth below, the Commodity Exchange Act explicitly authorizes this Court to grant the *ex parte* relief Plaintiffs seek in order to stop Defendants' on going violations of the Act, and the evidence presented by the Plaintiffs meets the standard for entry of an *ex parte* statutory restraining order enjoining such conduct. All of the Defendants have committed and continue to commit fraud in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(i) and (iii)(2004), and Commission Regulations 1.1 (b) (1) and (3), 17 C.F.R. §§ 1.1(b)(1) and (3) (2002). Defendants Pacific Best and the South China Common Enterprise have sold and continue to sell illegal futures contracts in violation of Section 4(a), 7 U.S.C. § 6a (2004).

## A.   The Commodity Exchange Act Explicitly Authorizes The Court To Grant The Requested *Ex Parte* Statutory Relief

Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a)(2004), empowers United States district courts to grant restraining orders to freeze assets and prohibit any person from destroying records or denying Commission officials access thereto.[1]   Mindful that notice "may result in the destruction of books and records and the dissipation of customer funds," Congress authorized courts to issue such relief *ex parte,* in order "to prevent possible removal or destruction of potential evidence or other impediments to legitimate law enforcement activities and to prohibit movement or disposal of funds, assets and other property which may be subject to lawful claims of customers."   H.R. Rep. No. 97-565, at 53-54, 93 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3871, 3902-03, 3942.   Such relief will "ensure that the court maintains jurisdiction over [the defendants'] assets, in order to allow the court the opportunity to determine later whether disgorgement of illegally acquired profits is appropriate."   *CFTC v. Morgan, Harris & Scott, Ltd.,* 484 F. Supp. 669, 679 (S.D.N.Y. 1979).   Under the statute, such restraining orders may be issued – even on an *ex parte* basis -- whenever it appears that any person has engaged, is engaging or is about to engage in any act or practice constituting a violation of the Act.   *See, e.g., CFTC v. Clothier,* 788 F. Supp. 490 (D. Kan. 1992).   As explained below, because Commission actions for injunctive relief are statutorily based, the requirements of Fed. R. Civ. P. 65 do not govern a request for a restraining order under Section 6c(a), 7 U.S.C. § 13a-1(a).

An asset freeze is appropriate in this case because customer funds must be preserved

---

[1] Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2004), provides, in pertinent part: "[N]o restraining order (other than a restraining order which prohibits any person from destroying, altering, or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when as requested, any books and records or other documents or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property and other than an order appointing a temporary receiver to administer such restraining order to perform such other duties as the Court may consider appropriate) or injunction for violation of the provisions of this Act shall be issued *Ex parte* by said Court."

where, as in this instance, the Commission seeks disgorgement and restitution. *See CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 678 (S.D.N.Y. 1979); *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). Moreover, a freeze also maintains the court's jurisdiction over the assets when presented with "[a] *prima facie* case of illegality." *Muller*, 570 F.2d at 1300. Furthermore, Defendants continue to solicit prospective customers via the Internet.

An order prohibiting the destruction of records and granting the Commission access to inspect and copy records will allow the Commission to identify Defendants' assets and determine the identity of any possible additional victims of their fraudulent solicitations. Given the ease of destroying documents, Defendants' records must be preserved at the very outset of litigation for there to be a meaningful opportunity to locate and recover customer funds and to determine the scope of the wrongs perpetrated by the defendants' fraudulent scheme. *See Clothier*, 788 F. Supp. at 493. Such relief will "preserve the *status quo* while an investigation is conducted to clarify the sources of various funds." *CFTC v. Morgan, Harris & Scott*, 484 F. Supp. at 678. Moreover, a freeze also maintains the court's jurisdiction over the assets when disgorgement or restitution is ordered. *See CFTC v. American Metal Exchange Corp.*, 693 F. Supp. 168, 196 (D.N.J. 1988). This relief is appropriate in this case as none of the Defendants are registered with the Commission and none are therefore under any independent, regulatory obligation to maintain records that may be material to determining the full extent of their violative conduct.

**B.      The Evidence Meets The Standard For Entry Of An *Ex Parte* Restraining Order**

Unlike private actions for equitable relief, a Commission action for injunctive relief is a creature of statute.[2] The injunctive relief contemplated in Section 6c of the Act is remedial in nature and designed to prevent injury to the public, afford redress to aggrieved persons, and deter

---

[2] Section 6c of the Act, 7 U.S.C. § 13a-1, does not impose any time limit on a statutory restraining order, unlike Fed. R. Civ. Proc. 65. Accordingly, there is no 10-day expiration period, and the restraining order remains in effect until further order of the Court.

Memorandum of Points and Authorities

future violations.  Section 6c(b) of the Act provides in pertinent part that "[u]pon a proper

showing, a... temporary injunction... shall be granted without bond."

　　　　In the Ninth Circuit, the general standard for obtaining a preliminary injunction provides

that: "the moving party must show either (1) a combination of probable success on the merits and

the possibility of irreparable injury or (2) that serious questions are raised and the balance of

hardships tips sharply in its favor." *U.S. v. Nutri-Cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992).

However, unlike private actions for equitable relief, a Commission action for injunctive relief is

a creature of statute.  "The function of a court in deciding whether to issue an injunction

authorized by a statute of the United States to enforce and implement Congressional policy is a

different one from that of the court when weighing claims of two private litigants." *U.S. v.

Odessa Union Warehouse Co-op*, 833 F.2d 172, 174-75 (9th Cir. 1987). Restrictive concepts

ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of

other remedies, are inapplicable. *CFTC v. Muller*, 570 F.2d at 1300; *CFTC v. Hunt*, 591 F.2d

1211, 1220 (7th Cir. 1979), *cert denied*, 442 U.S. 921 (1979); *CFTC v. Crown Colony

Commodity Options, Ltd.*, 434 F. Supp. 911, 919 (S.D.N.Y. 1977).  The Commission is entitled

to injunctive relief upon a showing that a violation has occurred and is likely to continue unless

enjoined. *CFTC v. Muller*, 570 F.2d at 1300; *CFTC v. Hunt*, 591 F.2d at 1220; *CFTC v. British

Am. Commodity Options Corp.*, 560 F. 2d 135, 141 (C.A.N.Y. 1977).

　　　　In the *Odessa* decision, the Ninth Circuit Court reversed the district court's denial of a

motion for preliminary injunction in a case where the United States, as the moving party, had

presented uncontested evidence that the defendant was in continuing violation of the Food, Drug

and Cosmetic Act.  The Ninth Circuit held that, in such cases of statutory violations, the

government is entitled to a presumption that it would suffer irreparable injury if its motion were

denied. *Id.* at 175-76.

The Ninth Circuit distinguished the *Odessa* decision in *U.S. v. Nutri-Cology*, a case in which the government, in moving for entry of a preliminary injunction, failed to show that it was likely to prevail on the merits. Because the Government had made merely "a colorable showing of a violation," it was "not entitled to a presumption, rebuttable or otherwise, of irreparable injury." *Nutri-Cology*, 982 F.2d at 398. In contrast, the Government in *Odessa* had shown an "undisputed statutory violation" and therefore, was entitled a presumption of irreparable injury. *Odessa*, 833 F.2d at 176.

Similar to the Government in *Odessa*, the Commission has submitted clear evidence of a statutory violation in this case. The record of fraudulent solicitation in connection with foreign currency futures contracts has been substantially demonstrated through sworn declarations, business records, and customer documents and provides ample evidence demonstrating a *prima facie* case of fraud and warranting preliminary injunctive relief against future violations.[3] The law provides that irreparable injury arising out of the defendants' ongoing fraud and misstatements is presumed, and an order of preliminary injunction is, therefore, appropriate.

**C. Defendants Have Committed Fraud In Connection With The Sale Of Off-Exchange Futures Contracts, In Violation Of Sections 4b(a)(2)(i) And (iii) Of The Act And Commission Regulations 1.1(b)(1) And (3)**

Defendants have violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(i) and (iii)(2004) and Commission Regulations 1.1 (b) (1) and (3), 17 C.F.R. §§ 1.1(b)(1) and (3)(2002) by cheating, defrauding, and deceiving customers by, among other practices: a) falsely misrepresenting the profit potential from trading through their business; b) failing to disclose the risk of loss from trading in foreign currency futures contracts through their business; c) failing to

---

[3] "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan American Grain Company*, 805 F.2d 23, 26 (1st Cir. 1986)).

disclose the lack of experience of the South China Common Enterprise account executives; and

d) failing to disclose the fact that Defendant Zhou had been the subject of prior California

litigation stemming from similar fraudulent solicitation which resulted in an injunction against

her.[4]

In the case of solicitation fraud, establishing a violation of Section 4b(a)(2)(i) and (iii)

requires a showing that the defendant (1) made a misrepresentation, misleading statement or

deceptive omission (2) that was material and did so (3) with scienter. *See v. R.J. Fitzgerald &*

*Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104,

115 (S.D.N.Y. 1998), *aff'd in relevant part sub nom, CFTC v. Vartuli*, 228 F.3d 94 (2d Cir.

2000).

Misrepresenting and omitting material facts in soliciting investor funds to trade futures

contracts violates Section 4b of the Act. *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 110-111

(2nd Cir. 1986); *In re Slusser,* 1999 WL 507574, * 10-11 (CFTC), *aff'd and remanded on other*

*grounds sub nom. Slusser v. CFTC,* 210 F.3d 783 (7th Cir. 2000). A material fact is one in which

"it is substantially likely that a reasonable investor would consider . . . important in making an

---

[4]   Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2004) provides, in relevant part:

It shall be unlawful . . . for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person . . .

(i) to cheat or defraud or attempt to cheat or defraud such other person; . . .

(iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person . . .

Commission Regulations 1.1(b) (1) and (3), 17 C.F.R. §§ 1.1(b)(1) and (3)(2002), also prohibits the same fraudulent conduct with respect to foreign currency transactions.

Memorandum of Points and Authorities

1    investment decision." *Sudol v. Shearson Loeb Rhodes, Inc.*, 1985 WL 55286, * 3 (CFTC).

2         As detailed above, the individual Defendants repeatedly made false and misleading

3    statements regarding the likelihood of profit and risks associated with its foreign currency trading

4    program. The individual Defendants touted the experience of the "account executives" when

5    they knew that many of these same people had no training in trading foreign currency prior to

6    responding to Defendants' advertisements.

7         Misrepresentations of profit or risk are material statements that violate the anti-fraud

8    provisions of the Act. *R.J. Fitzgerald & Co.*, 310 F.3d at 1329-1330 (misrepresentation of profit

9    and risk are material); *Noble Wealth*, 90 F. Supp. 2d at 686 (representations about profit potential

10   and risk "go to the heart of a customer's investment decision" and are therefore material as a

11   matter of law); *CFTC v. U.S. Precious Metals Depository Co.*, 468 F. Supp. 1149, 1160

12   (S.D.N.Y. 1979) ("glowing" representations concerning market expectations and likelihood of

13   profit are misrepresentations regarding profitability of investment). Misrepresenting the nature

14   of an organization can also violate the anti-fraud provisions of the Act. *Psimenos v. E.F. Hutton*

15   *& Co, Inc.*, 722 F.2d 1041, 1043-44 & n.5 (2nd Cir. 1983) (material misrepresentations about the

16   nature of an organization, the quality of staff and the type of trading the funds would be used for

17   can violate Section 4b of the Act); *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 98, 104 (7th

18   Cir. 1977) (misrepresentations regarding the profitability of an enterprise and the competency

19   and experience of the staff and the information that would be sent to a commodity futures

20   customer stated a cause of action under Section 4b of Act).

21        For purposes of proving a violation of Section 4b(a)(2)(i) and (iii), scienter is established

22   if a defendant intended to defraud, manipulate, or deceive, or if a defendant's conduct represents

23   an extreme departure from the standards of ordinary care. *R.J. Fitzgerald & Co.*, 310 F.2d at

24   1328; *CFTC v. Heffernan*, 245 F.Supp. 1276, 1292 (S.D.Ga 2003). Scienter may be

established by showing that: (1) the defendant knew his misrepresentations were false; or (2) the

defendant made the representations with a reckless disregard for their truth or falsity. *Drexel*

*Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (recklessness is sufficient to

satisfy scienter requirement).

As set forth above and in the customer declarations, Defendants Xu, Zhou, and Tse made

multiple false representations about the profitability of trading with Defendants and about

absence of risk of trading.  Zhou knew the statements regarding profits and expected returns were

false because it was she that directed the trading in many customer accounts at Pacific Best and

was aware that her trading of customer funds resulted in substantial losses.  As customers

sustained these losses they would call Zhou and question her about these losses. Ex. 2, ¶ 11.

Zhou's misrepresentations and deceptive omissions violated Section 4b(a)(2) of the Act.

Likewise, Defendant's Tse and Xu recommended trades to customers or traded on behalf of

customers and were similarly aware that the customers accounts sustained losses, yet they

continued to solicit customers in violation of Section 4b(a)(2) of the Act through

misrepresentations and deceptive omissions.  As such, Defendants' scienter is established.

**D.      Defendants' Foreign Currency Futures Transactions Violate Section 4(a) Of
         The Commodity Exchange Act**

Defendants Pacific Best and the South China Common Enterprise have violated Section

4(a) of the Act, 7 U.S.C. § 6(a)(2004), by offering and selling contracts for future delivery of

foreign currency to members of the general public who are not eligible contract participants

under the CFMA.  Specifically, Section 4(a) of the Act makes it unlawful to conduct a business

involving commodity futures contracts if the transactions are not "conducted on or subject to the

rules of a board of trade which has been designated by the [CFTC] as a contract market or

derivatives transaction execution facility for such commodity [and] ... executed or consummated

by or through a contract market. ..." 7 U.S.C. § 6(a) (2004).  Pacific Best foreign currency

futures trades have not been conducted on any such board of trade or with a member of such a market, but have been of the type commonly referred to as "off-exchange" contracts. *CFTC v. Topworth*, 205 F.3d 1107, 1114 (9th Cir. 1999).

Generally, courts determine whether a contract is a futures contract based upon its characteristics. The Ninth Circuit has held that futures contracts are contracts for the purchase or sale of a commodity for delivery in the future at a price that is established at the time the contract is initiated. *CFTC v. Noble Metals Int'l*, 67 F.3d 766, 772 (9th Cir. 1995). Absent the establishment of a price or price formula at the formation of the contract, there is no means upon which to value the contract and, therefore, no market for the contract can arise.

Second, the ability to form offsetting contracts is essential since investors rarely take delivery against the contracts. *Noble Metals Int'l*, 67 F.3d at 772; *CFTC v. Co Petro*, 680 F. 2d 573, 580 (9th Cir. 1982). This characteristic is reflected in the fungible nature of futures contracts. As the Ninth Circuit explained in *Co Petro*, 680 F. 2d at 579-80:

> Futures contracts traded on the designated markets have certain basic characteristics. Except for price, all the futures contracts for a specified commodity are identical in quantity and other terms. *The fungible nature of these contracts facilitates offsetting transactions* by which purchasers or sellers can liquidate their positions by forming opposite contracts. The price differential between the opposite contracts then determines the investor's profit or loss...

(emphasis supplied).

More recently, the United States District Court for the District of Maryland held that a futures contract is:

> a contract for the purchase or sale of a commodity for delivery in the future at a price established at the time the contract is initiated . . . [and] may be fulfilled through offset, cancellation, cash settlement or other means to avoid delivery, and is entered into primarily to hedge or speculate upon price changes in the commodity without transferring ownership of the commodity.

*CFTC v. Noble Wealth Data Info. Servs., Inc.,* 90 F. Supp. 2d. 676, 688 (D. Md. Mar. 20, 2000).[5]

A Commission economist has examined Defendants' promotional material and accompanying documents and has concluded that the Pacific Best and the South China Common Enterprise engage in the offer and sale of off-exchange foreign currency futures contracts. (Ex. 8, ¶¶ 27; 32). First, the contracts are created with a price or price formula that is determined at the time the contract is entered. (Ex. 8, ¶ 32). Second, the contract itself evidences the parties' intention that the contract should provide for an ability to offset the customers' positions, rather than delivery of the currency itself. Ex. 8, ¶ 28. Specifically, the contract has a provision allowing the customer to liquidate his or her position. *See* Ex. 2B, p. 3, ¶ 12 ("when such a contract is liquidated, [Pacific Best] shall debit or credit the account of the Customer in the currency in which such account is denominated at a rate of exchange (where the relevant contract is denominated in currency other than that of the account) determined by [Pacific Best] at the sole discretion of PBGL on the basis of the then prevailing money market rates of exchange between such currencies"). Moreover, there is no indication that customers are required to hold or have a capacity to acquire or deliver physical foreign currency. (Ex. 8, ¶ 28; 32). Indeed, the customer declarations obtained by the Commission establish that the purpose of their investment was to speculate and make a profit in the foreign currency market. (Ex. 2, ¶ 5; Ex. 3, ¶ 6; Ex. 5, ¶ 5; Ex. 6, ¶¶ 4, 6).

Moreover, the foreign currency transactions conducted by Pacific Best and the South China Common Enterprise have four trading features that are commonly used in exchange traded futures markets: standardized contracts, margining of positions, stop-loss orders and commission charges. (Ex. 8, ¶¶ 29, 30). *See In re First Nat'l Monetary Corp.*, 1985 WL 55299, * 4; (Ex. 8, ¶ 30). Pacific Best customers finance their trading through a system of original and maintenance

---

[5] On separate grounds, *CFTC v. Noble Wealth* was affirmed in part, vacated in part, and remanded in part by *CFTC v. Baragosh* 278 F.3d 319 (4th Cir. 2002).

margin, thereby providing their customers a mechanism by which they can profit from, or sustain

losses from, trading in the value of the contract.  (Ex. 8, ¶ 30).  Defendants also explicitly

informed some of their customers that the use of stop-loss orders would provide a hedge against

losing their initial investment.  (Ex 5, ¶ 5; Ex. 6, ¶ 6).

Finally, Defendants do not conduct their foreign currency futures transactions on or

subject to the rules of a board of trade that has been designated or registered by the Commission

as a contract market or derivatives transaction execution facility for such commodity.

Defendants do not execute or consummate their contracts by or through a contract market.

Accordingly, based upon the above characteristics and the controlling precedent in this Circuit,

the futures contracts at issue here are in violation of Section 4(a) of the Act, 7 U.S.C. §

6(a)(2002).

### E.   NICI And South China Constitute A Common Enterprise

"When determining whether a common enterprise exists, courts look to a variety of

factors, including: common control, *Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1175 (1st

Cir. 1973), *Waltham Precision Instrument Co. v. FTC*, 327 F.2d 427,431 (7th Cir.), *cert. denied*,

377 U.S. 992 (1964); the sharing of office space and officers, *Zale Corp. and Corrigan-Republic,*

*Inc. v. FTC*, 473 F.2d 1317, 1320 (5th Cir. 1973), *Delaware Watch Co. v. FTC*, 332 F.2d

745,746 (2nd Cir. 1964); whether business is transacted through 'a maze of interrelated

companies,' *Delaware Watch*, 332 F.2d at 746; the commingling of corporate funds and failure

to maintain separation of companies, *SEC v. Elliot*, 953 F.2d 1560, 1565 n.1 (11th Cir. 1992);

unified advertising, *Zale Corp.*, 473 F.2d at 1320.  As a common enterprise, Defendants are

jointly and severally liable for the acts of the common scheme.  *Id. See also Noble Wealth.*, 90 F.

Supp. 2d at 691 (concluding that when two firms were formed as successors to original

corporation, and the successors were operated by the same individuals and used the same

marketing materials as one another, all three firms were jointly and severally liable for violations of the Act).

NICI is merely South China Investments operating under a new name.  Its address and telephone number are the same, its employees, including Zhou and Tse, are the same, and at least some of its customers are the same.  It also uses the same website advertising used by South China Investments.  There is no meaningful distinction between the two corporations.  Therefore, NICI and South China Investments are engaged in a common enterprise and are jointly and severally liable for violations of the Act and Commission Regulations.

**F.   Expedited Discovery Is Appropriate To Enable**
**The Commission To Fulfill Its Statutory Duties**

The Plaintiffs also moves this Court for an order granting expedited discovery for the purpose of ascertaining Defendants' assets and the identity of their customers.  Expedited discovery, in advance of that provided by Rule 26 of the Federal Rules of Civil Procedure, is necessary to enable the Commission to fulfill its statutory duties.  Specifically, discovery of Defendants' complete assets and customers will enable the Commission to protect Defendants' customers from further loss and damage by ensuring that the Defendants are complying fully with the Court's restraining order.

Expedited discovery is also necessary to determine whether a temporary receiver should be appointed to administer the funds recovered from the defendants.  Although the Act provides for the appointment of a temporary receiver, at this time the Commission is unable to determine the extent of defendants' assets in order to ascertain whether the appointment of a receiver would be prudent.  Discovery of Defendants' complete assets would allow the Commission to  determine if sufficient assets exist such that a temporary receiver would be warranted.

In similar cases, courts have granted Plaintiff's request for expedited discovery. *See, e.g., Commodity Futures Trading Commission v.Chilcott et al.*, 2002 WL 1455345 (M.D. Fla.)

24

(granting the Commission's request for expedited discovery in addition to issuing an ex parte restraining order freezing the defendants' assets); *Commodity Futures Trading Commission v. Luger*, 2002 WL 1789768 (S.D. Fla.) (same); *Commodity Futures Trading Commission v. First Bristol Group, Inc.*, 2002 WL 31357411 (S.D. Fla.) (same).

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully moves this Court to grant its request for an *ex parte* statutory restraining order, its request for expedited discovery and, subsequently, to grant Plaintiffs' request for a preliminary injunction.

Respectfully submitted,

KEVIN K. BATTEH, (DC Bar No. 482021)
Trial Attorney
JAMES H. HOLL, III, (DC Bar No. 453473)
Senior Trial Attorney
ERIN E. VESPE, (CT Bar No. 407295)
Chief Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st St. N.W.
Washington, D.C. 20581
Telephone (202) 418 -5636
Facsimile (202) 418-5538
Attorneys for Plaintiff U.S. Commodity
Futures Trading Commission

WAYNE STRUMPFER
Acting California Corporations Commissioner
ALAN S. WEINGER (CA State Bar No. 86717)
Acting Deputy Commissioner
EDWARD KELLY SHINNNICK (CA State Bar No. 96209)
Corporations Counsel
71 Stevenson Street, Ste. 2100
San Francisco, CA 94105-2908
Telephone (415) 972-8544
Facsimile (415) 972-8550
Attorneys for Plaintiff Commissioner of
Corporations of the State of California

Memorandum of Points and Authorities