1  EDWARD GARTENBERG (State Bar No. 102693)
   ALEXANDRA EPAND (State Bar No. 191733)
2  THELEN REID & PRIEST LLP
   333 South Hope Street, Suite 2900
3  Los Angeles, California 90071
   Telephone: (213) 576-8000
4  Facsimile: (213) 576-8080
   egartenberg@thelenreid.com
5  aepand@thelenreid.com

6  ROBERT A. WEIKERT (State Bar No. 121146)
   THELEN REID & PRIEST LLP
7  101 Second Street, Suite 1800
   San Francisco, California 94105
8  Telephone: (415) 371-1200
   Facsimile: (415) 371-1211
9  raweikert@thelenreid.com

10 Attorneys for Defendants
   NATIONAL INVESTMENT CONSULTANTS, INC.,
11 And WEI M. TSE a.k.a. RAYMOND TSE, and for
12 Relief Defendant THERESA C. WONG

13            UNITED STATES DISTRICT COURT
           NORTHERN DIVISION OF CALIFORNIA
14             SAN FRANCISCO DIVISION

15 | U.S. COMMODITY FUTURES TRADING | CASE NO.: 052641 JSW
16 | COMMISSION and THE COMMISSIONER OF |
   | CORPORATIONS OF THE STATE OF | Assigned to Hon. Jeffrey S. White
17 | CALIFORNIA, |
18 |          Plaintiffs, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**
19 | vs. |
   | NATIONAL INVESTMENT CONSULTANTS, |
20 | INC, a California corporation, PACIFIC BEST |
   | GROUP LTD, a.k.a. PACIFIC BEST COMPANY |
21 | LTD, a British Virgin Islands Corporation, YI | DATE:    August 26, 2005
   | KERRY XU, an individual, RUN PING ZHOU | TIME:    9:00 a.m.
22 | a.k.a. FLORA ZHOU, an individual, and WEI M. | DEPT.:   2
   | TSE a.k.a. RAYMOND TSE, an individual, |
23 | |
24 |          Defendants, |
25 | And | [Filed concurrently with Declarations of:
26 | THERESA C. WONG, an individual, | Alexandra Epand, Raymond Tse, Lawrence Chi, Jin Xiao, Flora Zhou, Kerry Xu, Albert John Giorgi, Wei Ming Deng and Gordon Rausser]
27 |          Relief Defendant. |
28 |  |

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                   -1-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 2

II.    FACTUAL BACKGROUND ........................................................................... 4

    A.    The Defendants .................................................................................... 4

          1.    Pacific Best Group Ltd. a.k.a Pacific Best Company Ltd. ........................ 4

          2.    National Investment Consultants, Inc. ................................................ 6

          3.    South China Investments, Inc./Run Ping Zhou a.k.a. Flora Zhou ............ 7

          4.    Wei M. Tse a.k.a Raymond Tse ...................................................... 7

          5.    Yi Kerry Xu ............................................................................... 8

    B.    Plaintiffs' Purported Evidence of Defendants' Alleged Conduct Giving
        Rise To This Action. ........................................................................... 9

          1.    Mr. Ting ................................................................................... 10

          2.    Ms. Ramos ................................................................................ 11

          3.    Ms. Obradovic ........................................................................... 12

          4.    Mr. Lui ..................................................................................... 12

          5.    Ms. Liang .................................................................................. 12

    C.    Jurisdictional Issues .......................................................................... 12

III.    LEGAL ARGUMENT ................................................................................. 13

    A.    Legal Standard .................................................................................. 13

          1.    Plaintiffs Have Failed to Submit Sufficient Evidence to Establish
             That They Will Prevail on the Merits. ............................................. 14

               (a)    Plaintiffs Have not Established That Defendants Conduct is
                   Subject to the CEA. ......................................................... 14

               (b)    Plaintiffs Have not Met Their Burden of Establishing that
                   Defendants Have Committed Fraud ................................... 17

IV.    CONCLUSION ........................................................................................... 19

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION — CASE NO.: 052641  JSW

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*C.F.T.C. v. American Metal Exchange Corp.,*
   693 F.Supp. 168 (D.N.J. 1988) .................................................................................. 14

*C.F.T.C. v. British American Commodity Options,*
   560 F.2d 135 (2d 1977) *cert denied* 98 S.Ct. 3123, 438 U.S. 905, 57 1........................... 13

*C.F.T.C. v. CoPetro,*
   680 F.2d 573 (9th Cir. 1982).................................................................................. 16, 17

*C.F.T.C. v. Frankwell Bullion,*
   1994 WL 449071 ................................................................................................ 3, 15, 16

*C.F.T.C. v. Hunt,*
   591 F.2d 1211 (7th Cir. 1979)....................................................................................... 13

*C.F.T.C. v. Morgan, Harris & Scott, Ltd.,*
   484 F.Supp. 669 (S.D.N.Y. 1979)................................................................................... 13

*C.F.T.C. v. Muller.,*
   570 F.2d 1296 (5th Cir. 1978)........................................................................................ 13

*C.F.T.C. v. Noble Metals int'l,*
   67 F.3d 766 (9th Cir. 1995)...................................................................................... 16, 17

*C.F.T.C. v. Noble Wealth Data info Servs. Inc.,*
   90 F. Supp.2d 676 (Md. 2000) ................................................................................. 16, 17

*C.F.T.C. v. Zelener,*
   387 F.3d 624 (7th Cir. 2004)........................................................................ 14, 15, 16, 17

*C.F.T.C. v. Zelener,*
   2003 U.S. Dist. LEXIS 17660 ........................................................................ 3, 12, 14, 15

*Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc..,*
   446 F.2d 353 (C.A. 5th 1971) ...................................................................................... 17

*United States v. Nutri-Cology, Inc.,*
   982 F.2d 394 (9th Cir. 1992).......................................................................................... 13

**STATUTES**

7 U.S.C.
   Section  13a-1 .............................................................................................................. 13

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION — CASE NO.: 052641  JSW

**TABLE OF AUTHORITIES**

Page(s)

**MISCELLANEOUS**

Wright, Miller & Kane, *Federal Practice and Procedure:*
    Civil.2d S2949...................................................................................................................... 17

-iii-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1  Defendants National Investment Consultants, Inc. ("NICI"), Wei M. Tse a.k.a. Raymond

2  Tse ("Tse"), Specially Appearing Defendant PACIFIC BEST GROUP LTD., a.k.a. PACIFIC

3  BEST COMPANY LTD., and Relief Defendant THERESA C. WONG (hereinafter "Defendants")

4  submit the following Opposition to Plaintiffs' Motion for Preliminary Injunction ("Motion").

5  **I.     INTRODUCTION**

6  This Court should not issue an order of preliminary injunction based on the scant and

7  unsubstantiated evidence provided by Plaintiffs in support of their Motion.  The issue before the

8  Court is whether, given the totality of the circumstances, Plaintiffs have met their burden of

9  establishing that they will likely prevail on the merits of this case.  Defendants respectfully submit

10  that Plaintiffs have failed to set forth sufficient facts establishing a *prima facie* case against

11  Defendants and, therefore, this Court should either deny Plaintiffs' Motion or order an alternate

12  remedy.

13  In government enforcement actions, Plaintiffs' allegations are often afforded some

14  presumption of validity.  In support of their Motion, Plaintiffs submitted declarations of five

15  witnesses whose testimony, at first blush, appears disturbing.  Upon more careful scrutiny of the

16  colorful and conclusory testimony of these witnesses, and the even more conclusory claims made

17  in Plaintiffs' motion, the declarants' claims boil down to the following:  (1)  they all lost money;

18  and (2)  they did not understand the risks of their investments.  When this testimony is balanced

19  against the substantial, competent evidence submitted by Defendants in opposition to this motion,

20  it is clear that Defendants did not engage in a "scam" or commit fraud.

21  More specifically, there is absolutely no testimony or evidence that Defendants

22  misappropriated any funds, misrepresented the status of customer losses or failed to execute orders

23  as requested.  None of the declarants claim that Defendants provided them with inaccurate

24  statements of their accounts or that Defendants did not actually engage in foreign currency trades.

25  Moreover, the alleged lack of risk disclosure is directly contradicted by the Risk Disclosure

26  Statement contained in Pacific Best's Customer Agreement, which each declarant admits they

27  received.  And, the declarants provide no explanation for failing to withdraw their funds and close

28  their accounts when notified on a contemporary basis that they were losing money.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                                      -2-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1    In opposition to this motion, Defendants have submitted substantial evidence which shows
2    that Defendants:

3    • Advised clients of their risks associated with foreign currency trading;

4    • Did <u>not</u> advise clients that their investments were insured by the FDIC;

5    • Did <u>not</u> advise clients that their investments were tax-free;

6    • Did <u>not</u> misappropriate any funds;

7    • Did <u>not</u> threaten any clients;

8    • Operated a legitimate business;  and

9    • Legitimately traded customer funds through a bank or "foreign exchange merchant"
10       registered in Macau.

11   Defendant Pacific Best has been in business for over 15 years and has done business in
12   California for the last six years.  The moving papers cite to only five dissatisfied clients, out of the
13   over 400 clients that Pacific Best has serviced.  The complaining declarants are prejudiced by
14   reason of their losses and, as more fully set forth herein, there are questions as to their credibility
15   and willingness to participate in this action.  Ordering a preliminary injunction based on their
16   questionable testimony would be drastic.

17   In addition to the foregoing, there exists an issue of whether the C.F.T.C. has jurisdiction in
18   this case.  Defendants submit that the Declaration of Ronald Hobson does not set forth sufficient
19   facts to establish that the trades at issue were futures contracts.  Pursuant to the recent ruling of
20   *C.F.T.C. v. Zelener*, 2003 U.S. Dist. LEXIS 17660, a strikingly similar case, the court flatly
21   rejected Mr. Hobson's characterizations of 'spot' and 'futures' contracts.  It is notable that
22   Plaintiffs did not cite, discuss or even attempt to distinguish *Zelener* in their  moving papers.
23   Furthermore, Plaintiffs did not mention *C.F.T.C. v. Frankwell Bullion 1994 WL 449071*, a case
24   from this district, which was cited and relied upon by *Zelener* for the conclusion that the
25   transactions at issue were <u>not</u> futures contracts.  Finally, Defendants have submitted the
26   declaration of Gordon Rausser, an economist and professor at U.C. Berkeley, who questions
27   Mr. Hobson's characterizations of the trades as futures.

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -3-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1    Defendants respectfully submit that Plaintiffs have failed to provide evidence sufficient to

2    establish a *prima facie* case of a violation of the Commodity Exchange Act by Defendants and,

3    thus, a preliminary injunction is not warranted.  Issuance of the Statutory Restraining Order based

4    on the colorable witness testimony has prevented NICI from doing business and issuance of the

5    preliminary injunction would be financially devastating to all Defendants.  The declarations

6    submitted by plaintiffs cite to only $182,000.00 of claimed losses of which $75,000.00 constitute

7    loss suffered from a single unavailable declarant, Renee Ramos.  To date, despite substantial

8    efforts, Defendants have been unable to depose Ms. Ramos.

9    There are other less severe remedies available to Plaintiffs, such as requiring Defendants to

10   post a bond in the disputed amount, appointing a Special Master to resolve the specific complaints

11   or ordering an expedited trial.  Accordingly, Defendants request that this Court either deny

12   Plaintiffs' Motion or fashion alternative relief.

13   **II.    FACTUAL BACKGROUND**

14         **A.    The Defendants**

15               **1.    Pacific Best Group Ltd. a.k.a Pacific Best Company Ltd.**

16   Defendant Pacific Best Group Ltd. a.k.a Pacific Best Company Ltd. ("Pacific Best") is a

17   British Virgin Islands Company whose registered office is located at P.O. Box 957, Offshore

18   Incorporations Centre, Road Town, Tortola, British Virgin Islands.  (See Declaration of Lawrence

19   Chi ("Chi Decl.") ¶ 2.)  Pacific Best has been in business for approximately 15 years and has been

20   engaged in foreign currency trading in California for approximately six years.  (Chi Decl. ¶ 3.)

21   Over the course of those six years, Pacific Best has serviced over 400 clients.  *Id.*

22   When a U.S. customer trades in foreign currency, the customer either calls Pacific Best

23   directly or through an introducing broker and Pacific Best places the requested trade through either

24   Poseng Bank[1] in Macau or through what Pacific Best referred to as a "foreign exchange

25

26

---

27   [1]    Due to the difficulty in translating from Chinese to English, the spelling of this bank may
28   actually be PoSang Bank.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -4-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

merchant[2]" in Macau.  (Chi Decl. ¶ 5.)  All customer funds are deposited and held in a trust account in Poseng Bank in Macau.  Although NICI may initially accept customer money, NICI does not keep their money but immediately forwards it to Poseng Bank.  (Chi. Decl. ¶ 4.)  Pacific Best issues daily confirmation statements to NICI, who then provides them to the customers.  These statements reflect all monies going in and out of the account as well as all foreign currency transactions executed on behalf of the customer.  *Id.*

On June 1, 2004, Pacific Best entered into an agreement with NICI whereby NICI was to act as an "introducing broker" for Pacific Best.  (Chi Decl. ¶ 9.)  Pursuant to this agreement, NICI introduced clients to Pacific Best for the purposes of spot FOREX trading.  *Id.*  The customers that NICI introduced to Pacific Best executed Customer Agreements with Pacific Best and were clients of Pacific Best, not NICI.  *Id.*  Prior to entering in to this agreement with NICI, Pacific Best had a similar agreement with defendant South China.  *Id.*

Pacific Best is not a parent or subsidiary to either defendant NICI or South China and does not have any corporate relationship with NICI or South China.  (Chi Decl. ¶ 7.)  Pacific Best is not incorporated in California, does not have an agent for service of process in California and does not have an office, address or telephone number in California.  (Chi Decl. ¶ 7.)[3]

Wei Man Tse a.k.a. Raymond Tse was an employee of Pacific Best.  (Chi Decl. ¶ 10.)  Mr. Tse never had an ownership interest in Pacific Best and he was never an officer, director or managing agent of Pacific Best.  (Chi Decl. ¶ 10.)

Pacific Best was unaware that Flora Zhou had a prior injunction issued against her in 2000.  (Chi Decl. ¶ 8.)

---

[2]   Due to the short period of time within which to obtain testimony and a declaration from the principal in Macau, and due to the difficulty of translating certain terms from Chinese to English, defense counsel has not been able to obtain more specific information regarding these "foreign exchange merchants" in Macau.  However, counsel will submit additional information either via declaration or at oral argument.

[3]   Pacific Best intends to file a 12(b)(5) motion to dismiss this action for insufficiency of process which motion is due to be filed on August 26, 2005.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -5-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

2.     **National Investment Consultants, Inc.**

Defendant National Investment Consultants, Inc. ("NICI") was incorporated in California on February 2, 2004, and has its principal place of business at 300 Montgomery Street, Suite 660, San Francisco. (See Declaration of Jin Xiao ("Xiao Decl.") ¶ 2.)  NICI is owned and operated by Mr. Jin Xiao, who is not a defendant in this action.  *Id.*  NICI is a corporation in good standing.  *Id.*

On June 1, 2004, Pacific Best entered into an agreement with NICI whereby NICI was to act as an "introducing broker" for Pacific Best. (Xiao Decl. ¶ 4; Chi Decl. ¶ 9.)  Pursuant to this agreement, NICI introduced clients to Pacific Best for the purposes of spot FOREX trading.  *Id.* The customers that NICI introduced to Pacific Best executed Customer Agreements with Pacific Best and were clients of Pacific Best, not NICI.  *Id.*  NICI provided client services such as providing market information, communication and order placing with Pacific Best. (Xiao Decl. ¶ 4.)  However, at all times customers could place orders directly with Pacific Best and were not required to utilize NICI to place trades.  *Id.*

NICI and Pacific Best do not have any corporate relationship, they are not parent or subsidiaries of one another and they do not have any officers or employees in common. (Xiao Decl. ¶ 5; Chi Decl. ¶ 7.)  In or around July, 2004, NICI purchased a customer list from South China with some, but not all, customer information. (Xiao Decl. ¶ 6.)  NICI did not purchase any other assets or liabilities from South China. (Xiao Decl. ¶ 6.)

Mr. Tse is not and has never been an employee of NICI, but he did perform consulting and held some meetings explaining to NICI trainers the policies of Pacific Best. (Xiao Decl. ¶ 8.)

NICI trainees were never instructed to advise customers that they did not have to pay taxes if they deposited funds in cash. (Xiao Decl. ¶ 8.)  NICI trainees were never instructed to inform customers that their deposits were insured by the FDIC. (Xiao Decl. ¶ 9.)  All customers were informed that NICI did not keep their money and that the money was forwarded to Pacific Best. Pacific Best issued daily confirmation statements to NICI reflecting all monies going in and out of the account as well as all foreign currency transactions executed on behalf of the customers. (Xiao Decl. ¶ 10.)  NICI provided these statements to the customers on a daily basis.  These statements provided an accurate summary of each customer's gains and losses. (Xiao Decl. ¶ 10.)  NICI

1  employees were instructed to advise customers of the risks involved in foreign currency trading.

2  Customers were never told that they could not lose money or that their investments were

3  guaranteed. In fact, the Customer Agreement specifically outlines these risks. All customers

4  maintained their Customer Agreements in their own possession. (Xiao Decl. ¶ 11.)

5          **3.    South China Investments, Inc./Run Ping Zhou a.k.a. Flora Zhou**

6        Defendant South China Investments, Inc., ("South China") is a defunct and dissolved

7  corporation and ceased doing business on or about July 31, 2004. (See Declaration of Flora Zhou

8  ("Zhou Decl.") ¶ 3.) Defendant Flora Zhou was the sole shareholder and President of South

9  China. Raymond Tse did not have any ownership interest in South China and was not an

10  employee, officer or director of South China at any time. (Zhou Decl. ¶ 10.)

11        South China and Pacific Best entered into a contract similar to the contract between Pacific

12  Best and NICI wherein South China referred customers to Pacific Best for the purposes of

13  engaging in spot foreign currency trading. (Zhou Decl. ¶ 9.) South China and Pacific Best did not

14  have any corporate relationship and did not have any officers, directors or employees in common.

15  (Zhou Decl. ¶ 12.)

16        In or around July 2004, South China sold its customer list to NICI but did not sell any other

17  assets or liabilities to NICI. *Id.* NICI and South China do not have any corporate relationship,

18  officers or directors in common and do not and have not ever had any telephone numbers,

19  addresses or bank accounts in common. *Id.*

20        Although South China is a defunct corporation, it was incorporated in California in 2000.

21  (Zhou Decl. ¶ 3.) During this time, South China was a corporation in good standing and was not

22  the subject of any complaints other than those at issue in this matter. (Zhou Decl. ¶ 3.)

23          **4.    Wei M. Tse a.k.a Raymond Tse**

24        Defendant Wei M. Tse a.k.a. Raymond Tse ("Tse") has been an employee of Pacific Best

25  since 1998. (See Declaration of Raymond Tse ("Tse Decl.") ¶ 3.) Although Tse worked out of

26  NICI's office on Montgomery Street in San Francisco, Tse's employer at all times was Pacific

27  Best. *Id.* Tse never had any ownership interest in Pacific Best, NICI or South China and was

28  never an officer, director or managing agent of any of those entities. *Id.* Tse's job title at Pacific

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501            -7-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1    Best was business manager and he provided consulting work to NICI and held some meetings with

2    NICI employees. *Id.*

3        Tse denies and refutes the declarations of Hongyu Christina Liang, Renee Ramos, Sylvia

4    Obradovic, Danny Lui and Stephen Ting as follows:

5        a.)    Tse never instructed anyone at NICI to advise customers that their

6    investments would be tax free if they deposited cash;

7        b.)    Tse never instructed anyone at NICI to inform customers that their

8    deposits were insured by the FDIC.  All customers were informed that NICI did not keep their

9    money and that all money was forwarded to Pacific Best who issued daily confirmation statements

10   reflecting all monies going in and out of the account as well as all foreign currency transactions

11   executed on behalf of the customers.

12       c.)    Tse never instructed anyone at NICI to advise customers that they

13   could not lose money or that their investments were guaranteed.  Customers were provided with

14   full disclosure of the risks involved.  In fact, the Customer Agreement specifically outlines these

15   risks.  All customers maintained their Customer Agreements in their own possession.

16       d.)    Tse  denies ever threatening Ms. Ramos in any way or her child in

17   any way as she claims in paragraph 17 of her declaration.  On January 3, 2005, Ms. Ramos

18   requested Tse meet with her alone at the Mandarin Oriental Hotel.

19       e.)    Tse was not aware that Flora Zhou had an injunction issued against

20   her in 2000.

21       (Tse Decl. ¶ 4.)

22       **5.    Yi Kerry Xu**

23       Defendant Yi Kerry Xu ("Xu") was an employee of South China and NICI from

24   approximately December 2002 until June 2005.  (See Declaration of Kerry Xu ("Xu Decl.") ¶ 2.)

25   Xu was provided with several weeks of training for approximately two hours a day.  (Xu Decl.

26   ¶ 3.)  Ms. Xu became an administrative sales manager and assisted and trained other account

27   executives.  (Xu Decl. ¶¶ 3, 5.)  Xu opened and handled the account of Mr. Stephen Ting.  (Xu

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -8-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

Decl. ¶ 4.)  Ms. Xu denies and refutes the declaration of Stephen Ting in support of Plaintiffs'
Motion:

          a.      Xu did not tell Ting or any other customers their deposits were insured by
the FDIC;

          b.      Xu never told Ting or any other customers that they could not lose money
because Xu could "stop" or "lock in" before any losses occurred.  In fact, that statement
completely contradicts the RISK DISCLOSURE Statement contained in the Customer Agreement
which Mr. Ting and all other customers received prior to opening their accounts.

          c.      Xu explained to Mr. Ting how the foreign currency markets work;

          d.      Although Xu may have told Mr. Ting that she believed investments made
with cash were done so tax-free, Xu does not how and from whom where she obtained that
understanding; and

          e.      Xu did not threaten Mr. Ting, or any other customers, in any way.
(Xu Decl. ¶¶ 6, 7.)

**B.**     **Plaintiffs' Purported Evidence of Defendants' Alleged Conduct Giving Rise To
       This Action.**

Plaintiffs contend that Defendants made various misrepresentations to five complaining
witnesses:  Hongyu Christina Liang, Danny Lui, Renee Ramos, Sylvia Obradovic and Steven Ting.
Careful review of the declarations of these declarations demonstrates little more than conclusory
and unsubstantiated allegations.  Furthermore, only one witness, Mr. Ting, has actually provided
deposition testimony.  Despite several attempts at service, the other witnesses have either refused
to accept service of the depositions subpoena, refused to attend their deposition after proper
service with a subpoena or were otherwise unavailable.  (See Declaration of Alexandra Epand
("Epand Decl." ¶ 2-4.)  As such, Defendants cannot provide a full substantive response to their
declarations attached to Plaintiffs' Motion and respectfully request that the court either disregard
this evidence entirely or consider these facts when determining how much credence to give to their
testimony.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501

-9-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

Even if this Court does consider these declarations, however, they are insufficient to establish fraud or that Defendants are engaged in a "scam."

### 1.  Mr. Ting

Mr. Ting, appeared at his deposition and his testimony revealed the following:

1.  He conceded that he received statements from Pacific Best that were accurate and reflected his losses.  However, he claims he did not carefully read these statements.  (See Deposition of Steven Ting ("Ting Depo.") pp. 106:12-109:6 attached as Exhibit B to Epand Decl.);

2.  He has been a licensed real estate appraiser for six years and owns his own business.  (Ting Depo. Pp. 20:15-21:4; 31:15-33:9);

3.  He is a sophisticated investor who has been investing in the stock market for at least 10 years, and before investing, he usually researches companies.  (Ting Depo. pp. 38:8-48:25);

4.  He admitted that he received the Customer Agreement which contains the RISK DISCLOSURE STATEMENT and clearly states:

### "RISK DISCLOSURE STATEMENT

The risk of loss in trading spot currenies [*sic*], contracts can be substantial. You should therefore carefully consider whether such trading is suitable for you in light of your financial condition.  In considering whether to trade, you should be aware of the following:

1.  You may sustain a total loss of the initial fund and any additional funds that you deposit with PBCL to establish or maintain a position in the market. If the market moves against your position, you may be called upon by PBCL to deposit a substantial amount of additional deposit funds, on short notice, in order to maintain your position.  If you do not provide the required funds within the prescribed time, your position may be liquidated at a loss, and you will be liable for any resulting deficit in your account.

2.  You may place "stop loss" orders with PBCL to liquidate your position when the market reaches the price you have specified; but placing contingent orders, such as "stop loss" or "stop limit" will not necessarily limit your losses to the intended amounts, since market conditions may make it impossible to execute such orders.

3.  A "spread" position may not be less risky than a simple "long" or "short" position.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501

-10-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1        4.      The high degree of leverage that is often obtainable in investment
trading because of the small deposit requirements can work against you as well as
2  for you.  The use of leverage can lead to large losses as well as gains.

3             This brief statement cannot of course, disclose all the risks and other
significant aspects of the investment markets.  You should therefore carefully study
4  investment trading before you trade."

5  (Ting Depo. pp. 102:3-6; 102:21-104:14.)

6        5.      Although he testified that he did not read the Customer Agreement, he also testified

7  that he usually does read important financial documents such as bank statements, mortgage

8  applications, investment statements, etc.  He also prepares documents for his clients which

9  documents he expects his clients will review.  (Ting Depo. pp. 24:19-31:14; 34:17-36:6);

10       6.      He conceded that he was never told that he could not withdraw his money from

11  Pacific Best and that he was aware that he could withdraw his money at any time.  (Ting Depo.

12  pp. 87:20-88:14);

13       7.      Although he initially testified that he prepared his own declaration, he later recanted

14  the statement and stated that counsel for the California Department of Corporations, Mr. Shinnick,

15  prepared it.  (Ting Depo. pp. 68:23-69:6; 96:16-21; 97:24-98:11);

16       8.      The "threat" referred to in paragraph 6 of his declaration referred to nothing more

17  than a statement made by Kerry Xu that her boss has "power."  (Ting Depo. pp. 90:7-24); and

18       9.      He conceded that the statement regarding his net worth in Paragraph 16 was an

19  error.  His net worth is and, at the time he signed his declaration, was $300,000.00, not zero.  (Ting

20  Depo. pp. 99:11-100:13.)

21            2.      Ms. Ramos

22            As for Ms. Ramos, the statements in her declaration that she was afraid of Mr. Tse are

23  belied by a letter she wrote Mr. Tse on January 3, 2005.  (Tse Decl. ¶ 6.)  In Paragraph 17,

24  Ms. Ramos claims that Mr. Tse "threatened" her and her children.  However, in her January 3,

25  2005 letter, Ms. Ramos requested that Mr. Tse meet her alone at the Mandarin Oriental Hotel.

26  Further, Ms. Ramos' letter threatened legal action and media scrutiny if her money was not

27  returned.  Moreover, Ms. Ramos conceded that she was "wrong to invest" this money but she

28  "didn't realize it at the time because [she] was so worried about [her] children and some medical

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                        -11-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1   needs of [her] son." *Id.* Further, the trading records attached to her declaration demonstrate that

2   she, like the other declarants were promptly notified of any losses but voluntarily chose to continue

3   to engage in FOREX transactions.

4               **3.     Ms. Obradovic**

5         As to Ms. Obradovic, her declaration describes her as a "retired educator" with "experience

6   in real estate investments." Her declaration fails to mention that she is a licensed real estate broker

7   who owns several real estate investment properties in Northern California and that she has been

8   licensed since 1975, almost 30 years. (Epand Decl. ¶ 7.) Additionally, Ms. Obradovic refused to

9   accept service of the deposition subpoena and, in fact, she slammed the door on the process server

10  after he explained the purpose of the subpoena to her. (Epand Decl. ¶ 2.)

11              **4.     Mr. Lui**

12        As for Mr. Lui, he is out of the country for three (3) months and, therefore, cannot be

13  served with a subpoena and cannot be cross-examined. (Epand Decl. ¶ 2.)

14              **5.     Ms. Liang**

15        Ms. Liang's has been subpoenaed for deposition on August 15, 2005, and defense counsel

16  will lodge a transcript of her deposition with the court prior to the hearing of this Motion. (Epand

17  Decl. ¶ 9.)

18  **C.     Jurisdictional Issues**

19        In addition to the foregoing, this case involves complex issues of jurisdiction concerning

20  whether the C.F.T.C. can maintain this action against Defendants. In particular, the C.F.T.C. does

21  not have jurisdiction over spot foreign currency trades, and, therefore, Plaintiffs have submitted

22  the Declaration of C.F.T.C. Economist Ronald Hobson who opines that the trades at issue are not

23  spot trades but, rather, constitute futures transactions. Defendants submit, however, that the

24  Declaration of Ronald Hobson should be disregarded pursuant to the recent ruling of *C.F.T.C. v.*

25  *Zelener,* 2003 U.S. Dist. LEXIS 17660, a similar case where the court flatly rejected Mr. Hobson's

26  characterizations of 'spot' and 'futures' contracts. It is notable that the Plaintiffs did not cite,

27  discuss or even attempt to distinguish *Zelener* in their moving papers. Furthermore, as set forth in

28  the declaration of Gordon Rausser filed concurrently herewith, Mr. Hobson's analysis is flawed.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -12-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1    As a result of the foregoing, Defendants respectfully submit that Plaintiffs have failed to

2  provide evidence sufficient to establish a *prima facie* case against Defendants to warrant

3  imposition of a preliminary injunction.

4  **III.    LEGAL ARGUMENT**

5       **A.    Legal Standard**

6    In this Circuit, in order to obtain a preliminary injunction, the moving party must

7  demonstrate: (1) probable success on the merits and a significant threat of irreparable harm or (2)

8  serious questions on the merits and the balance of hardships tipping in its favor. *United States v.*

9  *Nutri-Cology, Inc.* 982 F.2d 394, 397 (9th Cir. 1992).  In statutory enforcement actions, the

10  standard for granting a preliminary injunction differs.  The government is entitled to a presumption

11  of irreparable injury only if  it establishes a *prima facie* case that it will probably prevail on the

12  merits. *Id.* At 398; *C.F.T.C. v. Muller.* 570 F.2d 1296 (5th Cir. 1978); *C.F.T.C. v. British*

13  *American Commodity Options* 560 F.2d 135 (2d 1977) *cert denied* 98 S.Ct. 3123, 438 U.S. 905,

14  57 l.Ed.2d 1147.  Where the government  makes merely a "colorable evidentiary showing" that it

15  will prevail on the merits, the government is not entitled to a presumption of irreparable injury,

16  and an injunction should not issue. *Nutri-Cology*, 982 F.2d at 398.

17    The discretion afforded the District Court in deciding whether to order injunctive relief

18  under Section 6c of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13a-1, is not completely

19  unfettered.  *C.F.T.C. v. Hunt,* 591 F.2d 1211 (7th Cir. 1979).  The court must look to the "totality

20  of the circumstances" to determine if an injunction should be entered and whether there is a

21  reasonable likelihood of future violations. *C.F.T.C. v. Morgan, Harris & Scott, Ltd.,* 484 F.Supp.

22  669 (S.D.N.Y. 1979).

23    Before issuing a preliminary injunction, this Court must determine whether Plaintiffs have

24  submitted sufficient evidence that Defendants have violated, and will continue to violate, the CEA.

25  Based on the inadequate evidence submitted by Plaintiffs in support of their motion, Plaintiffs will

26  not likely prevail on the merits and, therefore, they are not entitled to an injunction.

27

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

1.   **Plaintiffs Have Failed to Submit Sufficient Evidence to Establish That They Will Prevail on the Merits.**

In order to obtain injunctive relief, Plaintiffs must establish a *prima facie* case that Defendants engaged in conduct in violation of the CEA. Thus, Plaintiffs must establish, first, that Defendants are subject to the CEA and, second, that Defendants engaged in conduct in violation of the CEA. Plaintiffs, however, have failed to establish a *prima facie* case and, accordingly, cannot establish a likelihood of success on their claims against Defendants.

(a)   **Plaintiffs Have not Established That Defendants Conduct is Subject to the CEA.**

Plaintiffs have not established a likelihood of success on the merits because they have not proven that the CEA applies to Defendants' conduct. Plaintiffs allege that Defendants violated Section 4(a) of the CEA. Section 4(a) provides that:

> Unless exempted by the Commission pursuant to subsection (c) of this section, it shall be unlawful for any person to offer to enter into, to execute, to confirm the execution of, or to conduct any office or business, anywhere in the United States, its territories or possessions, for the purpose of soliciting or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery (other than a contract which is made on or subject to the rules of a board of trade, exchange, or market located outside the United States, its territories or possessions) . . ."

Thus, in order for Defendants to be subject to the statute, Plaintiffs have the burden of establishing that the investments at issue constituted "a contract for the purchase of a 'commodity for future delivery'" or a "futures contract."

There exists no bright line test for determining whether a particular contract is a futures contract over which the commission has jurisdiction. *C.F.T.C. v. American Metal Exchange Corp.* 693 F.Supp. 168, 192 (D.N.J. 1988). Over the years, courts have struggled with the distinction between spot contracts, not subject to the Commission's jurisdiction, and futures contracts. In 2003, the District Court of Illinois issued an opinion in *C.F.T.C. v. Zelener, et al.,* 2003 U.S. Dist. LEXIS 17660, affirmed by *C.F.T.C. v. Zelener* 387 F.3d 624 (7th Cir. 2004), which greatly clarified the issue. The opinion is most notable here because the Court in *Zelener* held that the declaration of Ronald Hobson, which is substantially similar to the declaration submitted by

1  Mr. Hobson in this case, <u>did not</u> establish that the contracts at issue were futures contract.

2  Therefore, the court dismissed the action for lack of jurisdiction.

3       In *Zelener*, the C.F.T.C. alleged that the Zelener Defendants operated a foreign currency

4  scam and defrauded investors of millions of dollars.  The C.F.T.C. sought and obtained an *ex parte*

5  restraining order against the Zelener Defendants freezing their assets and ordering them to provide

6  records to the C.F.T.C.  However, since the parties could not agree to certain terms of the

7  restraining order, the court set the matter for hearing on  a motion for preliminary injunction.  In

8  their opposition, the Zelener Defendants argued that the court lacked jurisdiction over the case

9  because the trading at issue did not involve futures contracts and, thus, the CEA did not apply.  *Id.*

10  at 3.  More specifically, the Zelener Defendants argued that the CEA only applied to trades in

11  futures, not trades in "spot" contracts.  In support of their contention that the Zelener Defendants

12  were trading in futures contracts, as here, the C.F.T.C. relied upon an affidavit of its own staff

13  member, Ronald Hobson, wherein he described the difference between  "futures," "forward" and

14  "spot" transactions.  The Court in *Zelener*  was not persuaded by Mr. Hobson's characterization of

15  the Zelener Defendant's activities as trading in futures.  Particularly, the court rejected Hobson's

16  position that when a person speculates in "spot" trades by holding positions and entering into

17  offsetting trades, thus avoiding delivery of the commodity, then his trades amount to transactions

18  in futures contracts.  This, in the Court's view, was a *non sequitur*.  *Id.* at 11-13.

19       The *Zelener* court also relied on the conclusion reached in *C.F.T.C. v. Frankwell Bullion*

20  *Ltd. No.* C-94-2166 DLJ, 1994 WL 449071 (N.D.Cal. Aug. 12, 1994), that held that a key defining

21  characteristic of a futures contract---a fixed delivery date and a fixed price at which the customer

22  must liquidate the contract---was "noticeably absent."  *Zelener*, 2003 U.S. Dist. LEXIS at 14.  In

23  contrast, the Court stated that the contracts traded by the Defendants in both *Zelener* (and

24  *Frankwell Bullion*) were "liquidated not on the basis of a value determined at the time of

25  contracting, but a market value determined at the time of **sale**."  *Id.* (emphasis added).  In

26  particular, the Court stated:

27            "BCG's customers were not trading in futures contracts; rather they

28            were speculating in spot contracts by rolling over positions and

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -15-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1     entering into offsetting trades.  The manner of the customer's overall

2     trading and the purpose for which it was conducted, does not serve

3     to transmute spot trading to trading in futures.  As the Court put in

4     *Bank Brussels Lambert*, the statute 'limits its coverage and the

5     CFTC's jurisdiction to futures.  It does not cover the spot market,

6     *regardless of the motivation of the transactions.*"  *Id.*  (emphasis in

7     original text.)

8         Similar to *Zelener*, in this case Plaintiffs have submitted a declaration of Ronald Hobson in

9    support of their Motion wherein Mr. Hobson makes an analogous distinction between futures and

10   spot trades as in *Zelener*.  However, as more fully set forth in the declaration of Gordon Rausser

11   filed concurrently herewith, Mr. Hobson's analysis is flawed.  Although Mr. Rausser concedes that

12   the trades do exhibit some characteristics of futures contracts, they also exhibit characteristics of

13   principal to principal forward and spot contracts.  (See Declaration of Gordon Rausser ("Rausser

14   Decl.") ¶ 4.).  Further, Mr. Rausser concludes that based on the dearth of materials that Mr.

15   Hobson reviewed, it is not possible to conclude that these are futures contracts.  In order to make

16   this conclusion, Mr. Hobson would have to conduct a detailed analysis of each and every

17   principal's transaction.  Mr. Hobson based his opinion solely on the Pacific Best Customer

18   Agreement and opening documents and the Account Statements of only 1 customer, Mr. Ting.

19   This is simply not enough information for Mr. Hobson to conclude that <u>all</u> transactions entered

20   into by each and every customer constitute futures as opposed to spot or forward contract principal

21   to principal trading.  (Rausser Decl. ¶ 5.)  Additionally, Mr. Hobson did not recognize that the

22   trades at issue in this case do not exhibit an important characteristic of futures trades, i.e. that they

23   are trades between strangers, facilitated by novation.  (Rausser Decl. ¶ 6.)

24       Notably, Plaintiffs failed to mention the *Zelener* decision or its reliance on the underlying

25   order in *Frankwell Bullion* in their moving papers.  The cases cited by Plaintiffs *C.F.T.C. v. Noble*

26   *Metals int'l,* 67 F.3d 766 (9th Cir. 1995); *C.F.T.C. v. CoPetro* 680 F.2d 573 (9th Cir. 1982);

27   *C.F.T.C. v. Noble Wealth Data info Servs. Inc.,* 90 F. Supp.2d 676 (Md. 2000), not only predate

28   *Zelener* but are distinguishable.

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                    -16-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1    The primary cases cited by Plaintiffs, *C.F.T.C. v. Noble Metals int'l*, 67 F.3d 766 (9th Cir.

2    1995) and *C.F.T.C. v. CoPetro*, 680 F.2d 573 (9th Cir. 1982) do not involve foreign currency

3    trades.  *Noble Metals* involved trading precious metals and *CoPetro* involved gasoline futures.

4    Thus, these cases are inapposite.  Although *C.F.T.C. v. Noble Wealth Data info Servs. Inc.*, 90

5    F.Supp.2d 676, did involve foreign currency trading, the case involved egregious trading practices

6    known as "bucket trading," which are not at issue in this case.  Further, the case was decided

7    before *Zelener*.  Accordingly, there is an issue whether the C.F.T.C. has jurisdiction over this

8    matter.

9           (b)    **Plaintiffs Have not Met Their Burden of Establishing that**

10                 **Defendants Have Committed Fraud**

11    While a Court may, in appropriate circumstances consider hearsay on a motion for a

12    preliminary injunction, "the district court's have shown appropriate reluctance to issue such orders

13    when the moving party substantiates his side of a factual dispute on information and belief."

14    *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 357 (C.A. 5th

15    1971).  The law favors a meaningful opportunity to challenge critical facts presented by affidavits.

16    *See Marshall, supra,* (reversing the granting of a preliminary injunction.)  The question of how

17    much weight an affidavit should be given is left to the trial court's discretion as to the quality and

18    credibility of the testimony that should be taken into account.  Wright, Miller & Kane, *Federal*

19    *Practice and Procedure:* Civil.2d S2949 at pp. 218-19.

20    In support of their Motion, Plaintiffs submitted declarations from five witnesses.  These

21    witnesses allege that Defendants failed to disclose the risks of foreign currency trading, however,

22    these allegations are not substantiated by any written documentation.  In fact, the RISK

23    DISCLOSURE STATEMENT contained in the Customer Agreement clearly sets forth the risks

24    involved in FOREX trading.  To some extent, the declarants allege that they were not given an

25    opportunity to review the Customer Agreement before signing.  Yet, there are no allegations that

26    anyone kept these agreements from the witnesses.  The witnesses were in possession of these

27    documents and *could have read them at any time*, even after signing.  Furthermore, none of these

28    witnesses testified that they were told they could not withdraw their money and, thus, after

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501

-17-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1   reviewing the Customer Agreement, and/or their trade statements, could have withdrawn their

2   money and closed their account(s).

3         Most importantly, however, these declarants do not contend that Pacific Best provided

4   inaccurate statements or concealed the true status of their investments.  It is undisputed that Pacific

5   Best provided customers with daily trade confirmations.  Absolutely <u>no</u> explanation is given by

6   any of these witnesses why they did not cease trading upon reviewing their losses.  Even Mr. Ting

7   acknowledged that he received the statements which accurately reflected his losses but testified

8   that he simply did not carefully review the entire statement.

9         In contrast to this evidence, Defendants have provided declarations that establish:

10    • NICI employees went through an approximate three-week training program;

11    • The training class (in which declarant Liang participated) was thorough, balanced and

12      emphasized customer service and full disclosure of the substantial risks of FOREX

13      trading to potential customers;

14    • No one at NICI was instructed to undermine the speculative nature of FOREX trading.

15      On the contrary, they were instructed to advise potential customers that FOREX traders

16      can and do lose money;

17    • No one at NICI was instructed to advise customers that they did not have to pay taxes if

18      they deposited cash.  In fact, customers were informed that it was their responsibility to

19      report all profits as neither NICI, nor its counter-party, Pacific Best, reported any

20      information to the Internal Revenue Service;

21    • Any claim that customers were advised that NICI or its customer accounts were insured

22      by the FDIC is not credible.  All customers were informed that their money was being

23      deposited with Pacific Best in China who issued daily confirmation and month end

24      statements reflecting all monies going in and out of the account as well as all FOREX

25      transactions executed on behalf of the customer;

26    • At the completion of the training class all participants were required to pass a written

27      examination and all traders receive continual, almost daily training in the fundamental

28      and technical aspects of FOREX trading;

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1          • Some customer accounts at NICI are currently profitable;

2          • No orders are entered without the customer's authority; and

3          • No one at NICI or Pacific Best was aware of the prior injunction against Zhou.

4          (See Declarations of Wei Ming Deng, Zhou, Xu, Xiao, Chi and Tse).

5          Defendant Pacific Best has been in business for over 15 years.  The moving papers cite to

6    only five dissatisfied clients, out of over 400 clients that Pacific Best has serviced.  Issuance of the

7    Restraining Order has prevented NICI from doing business and issuance of the preliminary

8    injunction would be financially devastating to all Defendants.  The declarations identify only

9    $182,000.00 of claimed losses.  FOREX transactions, as with all investments, have risks.  The

10   losses are unfortunate but <u>not</u> fraudulent.  In any event, there are alternate, less severe, remedies

11   available such as requiring Defendants to post a bond in the disputed amount, appointing a Special

12   Master to resolve the specific complaints or ordering an expedited trial.  Ordering a preliminary

13   injunction based on the evidence presented by Plaintiffs would be drastic and unjustified.

14   Accordingly, Defendants request that this Court either deny Plaintiffs' Motion or fashion

15   alternative relief.

16   **IV.     CONCLUSION**

17          This lawsuit and present Motion are premised on the theory that Defendants improperly

18   engaged in a foreign currency "scam" and defrauded investors through intentional

19   misrepresentations and "threats."  Plaintiffs' Motion however, fails to provide reliable, competent

20   evidence or authority to support their assertions.  Under this backdrop, there is a potential that

21   plaintiffs will not prevail on the jurisdictional issue presented in this opposition.  As such,

22   Defendants respectfully submit that Plaintiffs have failed to establish a *prima facie* case, and will

23   not likely prevail on the merits.  Accordingly, Defendants request that this Court deny Plaintiffs'

24   ///

25   ///

26   ///

27   ///

28   ///

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                         -19-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)

1   motion or, alternatively fashion alternative relief that does <u>not</u> impose the harsh relief sought by

2   Plaintiffs.

3

4   Dated:  August 1⎪, 2005                    THELEN REID & PRIEST LLP

5

6                                              By  _____

7                                                  EDWARD GARTENBERG
                                                   ALEXANDRA EPAND
8                                                  ROBERT A. WEIKERT
                                                   Attorneys for Defendants
9                                                  NATIONAL INVESTMENT CONSULTANTS,
                                                   INC.; WEI M. TSE a.k.a. RAYMOND TSE, and for
10                                                 Relief Defendant THERESA C. WONG and
                                                   Specially Appearing for Defendant PACIFIC BEST
11                                                 GROUP LTD, a.k.a. PACIFIC BEST COMPANY
                                                   LTD, a British Virgin Islands Corporation
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

LA#368501                                  -20-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (C 052642 JSW)